## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **REGINA KALKEY** | CIVIL NO. 22-1245 |
| PLAINTIFF | |
| VS. | DISCRIMINATION BASED ON SEX, DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN, |
| **EUROMODAS, INC.;** **PRPB, LLC;** **PRPB NORTE, INC.;** **PRPB OESTE, LLC;** **JUAN C. CASTIEL;** **MARILU MARRERO;** **INSURANCE COMPANY XYZ;** **COMPANY ABC;** **JOHN & JANE DOE.** | RETALIATION, WAGES & OVERTIME, WRONGFUL TERMINATION, BREACH OF CONTRACT, AND TORT DAMAGES  TRIAL BY JURY DEMANDED |
| DEFENDANTS | |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW, Regina Kalkey,** ("Plaintiff"), through the undersigned attorney and very respectfully states, alleges and prays as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff worked for a family-owned business that was managed by the owners Juan Castiel ("Castiel") and Marilu Marrero ("Marrero"), whom operate one single employer enterprise using various corporations using the business names of Euromoda, such as Euromodas, Inc., PRPB, LLC, PRPB Norte, Inc. and PRPB Oeste, LLC. Castiel, Marrero, Euromodas, Inc., PRPB, LLC, PRPB Norte, Inc. and PRPB Oeste, LLC (jointly "Defendants") violated the anti-discrimination and anti-retaliation federal and state labor laws when they illegally terminated the Plaintiff from her employment on May 31st, 2021. Additionally, the Defendants violated the

Federal Fair Labor and Standard Act ("FLSA") and its Puerto Rico equivalent when they did not pay the correct wages and overtime payments, and retaliated against the Plaintiff for complaining as to the same.

2.      Specifically, the Defendants illegally terminated the Plaintiff based on 1) their discriminatory actions against the Plaintiff on the grounds of race and national origin due to the Plaintiff being a white English-speaking American that was raised in the state of Massachusetts for most of her life, 2) their discriminatory actions against the Plaintiff on the grounds of sex because they allowed another male employee to create a hostile work environment based on sexual harassment against the Plaintiff, 3) their retaliatory actions against the Plaintiff on the grounds that the Plaintiff complained to the Defendants about their discriminatory actions against the Plaintiff on the grounds of race, national origin and sex, and 4) their retaliatory actions against the Plaintiff on the grounds that the Plaintiff complained that the Defendants violated the wages and overtime pay pursuant to the FLSA.

3.      Such actions constitute a disparate treatment by the Defendants based on discrimination based on sex, race and national origin pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation pursuant to Title VII and the FLSA, causing damages to the Plaintiff.

4.      Plaintiff files this civil action against the Defendant based on the following claims: Discrimination based on Sex, Race and National Origin pursuant to Title VII, 42 USC sec. 2000e-2(a), Puerto Rico's Law No. 100 of June 30, 1959 ("Law 100"), 29 LPRA sec. 146 *et seq*., Puerto Rico's Law No. 69 of July 6, 1985 ("Law 69"), 29 LPRA sec. 1321 et seq., and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Retaliation pursuant to Title VII, 42 USC sec. 2000e-3(a), FLSA, 29 USC sec. 201 *et seq.*, Puerto Rico's Law No. 115 of December

2

20, 1991 ("Law 115"), 29 LPRA sec. 194 et seq. and Section 16 of Article II of Constitution of the Commonwealth of Puerto Rico; Violation of Wages & Overtime Pay pursuant to the FLSA, 29 USC sec. 201 *et seq.,* Puerto Rico's Law No. 180 of July 27, 1998 ("Law 180"), 29 LPRA sec. 250 *et seq.,* Puerto Rico's Law No. 148 of June 30, 1969 ("Law 148"), 29 LPRA sec. 501 *et seq.;* Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976 ("Law 80"), 29 LPRA sec. 185a et seq.; Breach of Contract and Tort Damages pursuant to the Puerto Rico's Civil Code ("PRCC").

5.      Plaintiff seeks compensatory, punitive, double and liquidated damages, severance pay, back pay, front pay, and equitable and injunctive relief for Defendant's unlawful and discriminatory employment termination of the Plaintiff, based on her discrimination and retaliation claims. In addition, Plaintiff seeks other specific remedies that restore her to the position that she would have held in the absence of the retaliation and discrimination.

**JURISDICTION AND VENUE**

6.      The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to Title VII and FLSA.

7.      Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico constitutional and law claims arising from the same nucleus of operative facts. Specifically, Plaintiff files this action pursuant to Section 1 and 16 of Article II of the Constitution of the Commonwealth of Puerto Rico, Law 100, Law 115, Law 69, Law 180, Law 148, Law 80, and the PRCC.

8.       Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district and the defendant resides within this judicial district.

9.       Before filing this instant case, Plaintiff filed timely charges of discrimination on the basis of sex before the EEOC within three hundred (300) days after the adverse employment action. Plaintiff requested the Notice of Right to Sue from the EEOC, who must issue it mandatorily after one hundred and eighty (180) days of investigation. Plaintiff thus filed this timely Complaint.

10.      Plaintiff demands that all causes of action be tried before a jury.

## PARTIES

11.      Plaintiff, Regina Kalkey ("Plaintiff") is of legal age, currently domiciled and resident of San Juan, Puerto Rico. Plaintiff's postal address is the following: 73 Hathorne St., Salem, MA 01970. Her telephone number is 617-756-4266. Her electronic address is rkalkey@yahoo.com.

12.      Defendants, Castiel and Marrero are owners of the following companies: Euromodas, Inc., PRPB, LLC, PRPB Norte, Inc. and PRPB Oeste, LLC. These companies are organized and existing under the constitution and laws of the Commonwealth of Puerto Rico and of the United States of America. Castiel, Marrero, Euromodas, Inc., PRPB, LLC, PRPB Norte, Inc. and PRPB Oeste, LLC (jointly "Defendants") are dedicated to providing retail and commercial sales of clothes, shoes and other related clothing articles. All companies have a common designated office address at 176 Ave. FD Roosevelt, San Juan, PR 00919, and a common postal address at PO Box 194208, San Juan, PR 00919-4208. Defendants constitute an integrated enterprise and are therefore to be considered as a single employer because of the degree of interrelationship, common ownership and control, common management, and the degree of

centralization of labor relations and personnel functions at the Defendants' place of business in the Commonwealth of Puerto Rico. Furthermore, the Plaintiff requests this Honorable Court to issue an order to pierce the corporate veil as to all Defendants companies and seek all remedies against the Defendants owners, Castiel and Marrero. Plaintiff reserves the right to amend the Complaint once more information is discovered.

13.    Co-Defendant, Insurance Company XYZ ("Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the discriminatory incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said discrimination claims. Their current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

14.    Co-Defendant, Company ABC ("Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

15.    Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

**THE FACTS**

16.    The Plaintiff's race is white.

17.     The Plaintiff's national origin is American, whom was raised in the state of Massachusetts.

18.     The Plaintiff's sex is female.

19.     Prior to November of 2020, the Defendants approached the Plaintiff to invite her to work at the Defendants' businesses.

20.     As part of the conversations and negotiations with the Defendants, the Defendants promised to provide the Plaintiff Medical Insurance and a salary of $42,000.00, if the Plaintiff accepted the employment with the Defendants.

21.     The Plaintiff verbally informed the Defendants that she agreed to work for the Defendants if they provided the salary of $42,000.00 and that they would provide Medical Insurance.

22.     On November 4th of 2020, the Plaintiff signed an adhesion employment contract, which was drafted by the Defendants. The Plaintiff was not given any opportunity to review or modify the employment contract.

23.     After signing the adhesion employment contract provided by the Defendants, the Plaintiff was not provided either a job description or a description of her duties and functions. The Plaintiff was not used a copy of the contract at this time.

24.     Since November 4th, 2020 until May 31st, 2021 (the date of the Plaintiff's illegal termination), the Plaintiff frequently requested that the Defendants provide her either a job description or a description of duties and functions in order to have a better understanding as to what was her job position. The Defendants never provided the same.

25.     Additionally, since November 4th, 2020 until May 31st, 2021 (the date of the Plaintiff's illegal termination), the Plaintiff frequently requested that the Defendants honor their

promise to provide Medical Insurance and a salary of $42,000.00. However, the Defendants did not provide the Medical Insurance, until April of 2021, and they did not pay the salary of $42,000.00.

26.    Even though the Plaintiff was not provided a job description or a description of duties and functions, since the Plaintiff began to work for the Defendants, the Plaintiff understood that she was occupying a non-exempt job position.

27.    The Plaintiff understood that she was a full-time non-exempt employee for the Defendants. Throughout her time working with the Defendants, the Plaintiff understood that she was non-exempt employee because 1) she did not exercise any duties related to supervising two or more employees, 2) she did not interview, hire or fire employees, 3) she did not set any type of pay-rates, 4) she did not maintain sales records, 5) she did not appraise or evaluate other employees, 6) she did not handle employee complaints or disciplining employees, 7) she did not plan budgets, and 8) she did not provide for safety and security at the workplace.

28.    However, the Defendants constantly lied to the Plaintiff that she was occupying an exempt job position. They kept propounding this fabricated lie to try to cover for their violations of labor laws in that they did not pay the Plaintiff overtime whenever the work was performed in excess of the forty-hour work schedule.

29.    This statement that the Plaintiff was occupying an exempt job position was a fabrication because the Plaintiff was not undertaking any of the managerial duties and functions as explained above because the Owners, Castiel and Marrero, were the ones that assumed those roles.

30.    The Owners, Castiel and Marrero, have full and complete supervisory control of all the employees that worked for the corporations that were created to handle all Euromoda stores:

Euromoda, Inc. which operates the Euromoda Store at the Roosevelt Avenue, PRPB, LLC, which operates Euromoda Sports Store at Plaza las Americas, PRPB Norte, Inc., which operates the Euromoda Sports Store at Premium Outlet Barceloneta, and PRPB Oeste, LLC which operates the Euromoda Store at the Mayaguez Mall.

31.    The Owners, Castiel and Marrero, handle all corporations as a single enterprise and as an alter ego, due to the fact that the Owners commingle all the funds for their business and personal use. The Owners are in reality operating one family-owned business enterprise. The Owners share the employees of all their stores, ordering them to perform work in all the stores even though they are supposedly being employed by one corporation respective to their store.

32.    Based on the above, the Defendants employed more than fifteen (15) employees collectively within all their family-owned business enterprise.

33.    Throughout November 2020 until the Plaintiff's illegal termination on May 31st, 2021, the Defendants treated the Plaintiff differently when compared to all the other employees.

34.    First, the Defendants treated the Plaintiff differently because of the Plaintiff's race and national origin because the Plaintiff was the only white English-speaking American at the stores, whereas the rest of the employees were Hispanic Spanish speaking employees.

35.    The Defendants would treat the Plaintiff differently by ordering her to work more hours in overtime when compared to the other Hispanic employees.

36.    The Defendants would solely create unrealistic workloads and expectations towards the Plaintiff, but did not subject the Hispanic employees to the same unrealistic workloads and expectations.

37.    This unrealistic workload and expectations were created so they would keep harassing the Plaintiff for incomplete tasks that no other employee would be able to do them, nor were they subjected to.

38.    Since the beginning and up until the Plaintiff's termination, the Plaintiff requested that certain legal documents be provided in English due to her inability to read Spanish. The Defendants verbally stated to the Plaintiff that it is a waste of paper and inconvenient to get the legal literature translated from Spanish to English just for the Plaintiff.

39.    The Defendants dismissed the Plaintiff's request and began to frequently racially stereotype her with gaslighting innuendos and statements such as calling the Plaintiff either a "rubia" or "gringa", or mimicking and making fun of the Plaintiff's Spanish accent when she attempted to speak Spanish.

40.    This frequent racial stereotyping, bullying and harassment led to an unhealthy work environment because the Defendants began a pattern of giving out inconsistent instructions solely directed at the Plaintiff, but not towards the other Hispanic employees.

41.    An example would be that the Defendants prohibited the Plaintiff from working a normal forty-hour work week, and instead ordered the Plaintiff to work in excess of sixty hours per week from November of 2020 until around April of 2021.

42.    These unprofessional and disrespectful work orders that were in violation of the labor laws were done specifically because of the Plaintiff's race and national origin.

43.    These inconsistent instructions relating to job expectations and unrealistic workloads affected the Plaintiff's health physically and psychologically.

44.    Second, the Defendants had knowledge that since January of 2021, another male employee ("Harasser") began a pattern of sexual harassment against the Plaintiff.

45.    The Harasser began to make frequent unsolicited and unwelcome comments towards the Plaintiff.

46.    The Harasser would make comments about the Plaintiff's body, referencing her physical traits such as her curves being similar to a Latina.

47.    The Harasser would constantly ask the Plaintiff out on dates.

48.    The Harasser would create obstacles so that the Plaintiff would be unable to leave the office area in order to force a conversation with him.

49.    The Harasser would tell the Plaintiff that he would set up appointments at a beauty salon so that the Plaintiff would "look better".

50.    The Harasser would demand and question whether the Plaintiff was dating other guys.

51.    The Harasser would harass  by calling the Plaintiff via telephone and/or text message for non-work-related conversations to push the Plaintiff into a relationship.

52.    Since the beginning and during all these encounters the Plaintiff rejected the Harasser and requested him to stop this behavior.

53.    However, the Harasser continued.

54.    The Plaintiff told the Defendants of this pattern of sexual harassment since January of 2021, but the Defendants did not take any corrective action against the Harasser, dismissing it as a simple crush and not sexual harassment.

55.    This hostile work environment of sexual harassment was running parallel to the hostile work environment related to the unrealistic workloads and job expectations which was based on the unequal treatment due to the Plaintiff's race and national origin.

56.     None of the Hispanic Spanish speaking employees were subjected to the hostile work environment of sexual harassment or the hostile work environment related to the unrealistic workloads and job expectations.

57.     Third, the Plaintiff participated in several protected activities when the Plaintiff filed different complaints regarding her work with the Defendants such as a) voicing her complaint and opposing the sexual harassment on January of 2021, b) voicing her complaint on April of 2021 to the Defendants as to the unequal workplace treatment related to the unrealistic workloads and job expectations which was based on the unequal treatment due to her race and national origin, and c) voicing her complaint on April of 2021 to the Defendants when they forced her to work overtime without any compensation whatsoever nor abiding regular wage and hours in violation of labor laws.

58.     From April of 2021 until the Plaintiff's illegal termination on May 31st, 2021, the Plaintiff complained and opposed the discriminatory treatment against her.

59.     Due to the Plaintiff's lodging of complaints and opposition to the discriminatory treatment against her, she was illegally terminated by the Defendants on May 31st, 2021.

60.     The Defendants' actions constitute an illegal action against the Plaintiff based on 1) their discriminatory actions against the Plaintiff on the grounds of race and national origin due to the Plaintiff being a white English-speaking American that was raised in the state of Massachusetts for most of her life, 2) their discriminatory actions against the Plaintiff on the grounds of sex because the Defendants allowed a Harasser to create a hostile work environment based on sexual harassment against the Plaintiff, 3) their retaliatory actions against the Plaintiff on the grounds that the Plaintiff complained to the Defendants about their discriminatory actions against the Plaintiff on the grounds of race, national origin and sex, and 4) their retaliatory actions

against the Plaintiff on the grounds that the Plaintiff complained that the Defendants violated the FLSA.

61.     Based on the before mentioned actions, the Defendants incurred in discriminatory and retaliatory actions against the Plaintiff because of her race, national origin, sex and due to the Plaintiff participating and opposing said discriminatory activities.

62.     Defendant illegally terminated the Plaintiff in violation of anti-discrimination and anti-retaliation under federal and state laws.

63.     Company ABC was the parent company or an affiliated company of the Defendant. Company ABC had knowledge of Defendant's discriminatory decisions. Company ABC did not take any proper action to rectify and/or avoid the discriminatory actions incurred by the Defendant. Company ABC allowed the Defendant to discriminate against the Plaintiff, based on false pretextual grounds.

64.     John & Jane Doe had knowledge of Defendant's discriminatory decisions. John & Jane Doe did not take any proper action to rectify and/or avoid the discriminatory actions incurred by the Defendant. John & Jane Doe allowed the Defendant to discriminate against the Plaintiff, based on false pretextual grounds.

65.     At the time of these discriminatory incidents, Insurance Company XYZ held an insurance policy in favor of the Defendant, specifically to cover said discriminatory claims. Said insurance policy was in force at the time of the discriminatory incidents.

66.     Because of this illegal termination, the Plaintiff has suffered economic damages due to the deprivation of her compensation and benefits.

67.     Because of this illegal termination, the Plaintiff has suffered emotional damages due to depression, lost sleep, rest and humiliation of her professional reputation. Plaintiff has been at loss of her peace of mind and emotional stability.

68.     The Defendant is liable for all the Plaintiff's damages.

## FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON SEX

69.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

70.     Defendants' discriminatory conduct altered Plaintiff's employment condition because of Plaintiff's sex.

71.     At the moment that the Defendants' incurred in the discriminatory conduct, the Plaintiff was performing her job well enough to meet the Defendants' legitimate expectations.

72.     However, the Defendants treated the Plaintiff unequally because the Defendants allowed a Harasser to create a hostile work environment based on sexual harassment against the Plaintiff.

73.     The Defendants fabricated a false pretextual ground to justify the illegal termination.

74.     The Plaintiff denies this false pretextual ground.

75.     The Defendants fabricated this false pretextual ground in order cover the illegal termination and to treat the Plaintiff unequally compared to the Harasser, whom was not terminated.

76.     Defendants' conduct against the Plaintiff constitutes discrimination based on sex pursuant to Title VII, Law 100, Law 69, and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico.

77.     As a proximate result of Defendants' discriminatory practice, Plaintiff has suffered intensely, has been deprived of her means of livelihood, has suffered economic losses and has been emotionally injured.

78.     As a result of Defendants' discriminatory practices, Plaintiff lost the salary she was entitled to.

79.     Defendants are liable to Plaintiff for the back pay she was entitled had she maintained her position pursuant to Title VII.

80.     Plaintiff's last annual salary, plus benefits, was approximately fifty thousand dollars ($50,000.00).

81.     Defendants are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

82.     Pursuant to Title VII, Defendants' discriminatory practices against the Plaintiff were willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to punitive damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

83.     In the alternative, an adequate remedy under Law 100 & Law 69, Defendants are liable to Plaintiff for double the amount of back pay, front pay and compensatory damages, without

the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiffs' rights.

84.     Plaintiff's dismissal was the culmination of Defendants' discriminatory action against the Plaintiff because of her sex.

85.     Defendants are liable to Plaintiff under this cause of action, pursuant to Title VII, Law 100, PR Law 69 and the Constitution of the Commonwealth of Puerto Rico, in excess of one million five hundred thousand dollars ($1,500,000.00).

86.     In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against her.

87.     In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result, thereof, Defendants are liable for double compensatory and statutory damages. These damages are estimated at no less than one million five hundred thousand dollars ($1,500,000.00), which times two equal three million dollars ($3,000,000.00).

## SECOND CAUSE OF ACTION

### DISCRIMINATION BASED ON RACE & NATIONAL ORIGIN

88.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

89.     Defendants' discriminatory conduct altered Plaintiff's employment condition because of Plaintiff's race and national origin.

90.     At the moment that the Defendants' incurred in the discriminatory conduct, the Plaintiff was performing her job well enough to meet the Defendants' legitimate expectations.

91. However, the Defendants treated the Plaintiff unequally because the Defendants incurred in discriminatory actions against the Plaintiff on the grounds of race and national origin due to the Plaintiff being a white English-speaking American that was raised in the state of Massachusetts for most of her life

92. The Defendants fabricated a false pretextual ground to justify the illegal termination.

93. The Plaintiff denies this false pretextual ground.

94. The Defendants fabricated this false pretextual ground in order cover the illegal termination and to treat the Plaintiff unequally compared to the Hispanic employees.

95. Defendants' conduct against the Plaintiff constitutes discrimination based on race and national origin pursuant to Title VII, Law 100, and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico.

96. As a proximate result of Defendants' discriminatory practice, Plaintiff has suffered intensely, has been deprived of her means of livelihood, has suffered economic losses and has been emotionally injured.

97. As a result of Defendants' discriminatory practices, Plaintiff lost the salary she was entitled to.

98. Defendants are liable to Plaintiff for the back pay she was entitled had she maintained her position pursuant to Title VII.

99. Plaintiff's last annual salary, plus benefits, was approximately fifty thousand dollars ($50,000.00).

100. Defendants are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action

to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

101.   Pursuant to Title VII, Defendants' discriminatory practices against the Plaintiff were willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to punitive damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

102.   In the alternative, an adequate remedy under Law 100, Defendants are liable to Plaintiff for double the amount of back pay, front pay and compensatory damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiffs' rights.

103.   Plaintiff's dismissal was the culmination of Defendants' discriminatory action against the Plaintiff because of her sex.

104.   Defendants are liable to Plaintiff under this cause of action, pursuant to Title VII, Law 100, and the Constitution of the Commonwealth of Puerto Rico, in excess of one million five hundred thousand dollars ($1,500,000.00).

105.   In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against her.

106.   In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result, thereof, Defendants are liable for double compensatory and statutory damages. These damages are estimated at no less than one million five hundred thousand dollars ($1,500,000.00), which times two equal three million dollars ($3,000,000.00).

**THIRD CAUSE OF ACTION**

**RETALIATION**

107.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

108.    Defendants' retaliatory conduct altered Plaintiff's employment condition because Plaintiff engaged in a protected activity.

109.    Specifically, Plaintiff engaged in a protected activity by participating in a several protected activities when the Plaintiff filed different complaints regarding her work with the Defendants such as a) voicing her complaint and opposing the sexual harassment on January of 2021, b) voicing her complaint on April of 2021 to the Defendants as to the unequal workplace treatment related to the unrealistic workloads and job expectations which was based on the unequal treatment due to her race and national origin, and c) voicing her complaint on April of 2021 to the Defendants when they forced her to work overtime without any compensation whatsoever nor abiding regular wage and hours in violation of labor laws.

110.    Defendants took a materially adverse action against the Plaintiff, by terminating the Plaintiff because the Plaintiff participated in various protected activities.

111.    Defendants' adverse actions are causally connected with the Plaintiff's participation in a protected activity.

112.    The Defendants fabricated a false pretextual ground to justify the illegal termination.

113.    The Plaintiff denies this false pretextual ground.

114.    The Defendants' fabricated this false pretextual ground in order cover the illegal termination of the Plaintiff for participating in various protected activities.

115.    The Plaintiff's participation in protected activities was the direct cause of Defendants' adverse action of terminating the Plaintiff, thus constituting an unlawful retaliation.

116.    Defendants' conduct against the Plaintiff constitutes an unlawful retaliation pursuant to Title VII, FLSA, Law 115 and Section 16 of Article II of the Constitution of the Commonwealth of Puerto Rico.

117.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered intensely, has been deprived of her means of livelihood, has suffered economic losses and has been emotionally injured.

118.    As a result of Defendants' unlawful retaliation, Plaintiff lost the salary she was entitled to.

119.    Defendants are liable to Plaintiff for the back pay she was entitled had she maintained her position pursuant to Title VII, FLSA and Law 115.

120.    Plaintiff's last annual salary, plus benefits, was approximately fifty thousand dollars ($50,000.00).

121.    Defendants are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

122.    Pursuant to Title VII & FLSA, Defendants' unlawful retaliation against the Plaintiff was willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to punitive damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

123.    In the alternative, an adequate remedy under Law 115, Defendants are liable to Plaintiff for double the amount of back pay, front pay and compensatory damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiff's rights.

124.    Defendants are liable to Plaintiff under this cause of action, pursuant to Title VII, FLSA, Law 115 and the Constitution of the Commonwealth of Puerto Rico, in excess of one million five hundred thousand dollars ($1,500,000.00).

125.    In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against her.

126.    In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result, thereof, Defendant is liable for double compensatory and statutory damages. These damages are estimated at no less than one million five hundred thousand dollars ($1,500,000.00), which times two equals three million dollars ($3,000,000.00).

## FOURTH CAUSE OF ACTION

## WAGES & OVERTIME

127.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

128.    Defendants' actions constitute a violation of the FLSA, Law 180 and Law 148.

129.    The Defendants prohibited the Plaintiff from working a normal forty-hour work week.

130.    Instead, the Defendants ordered the Plaintiff to work in excess of sixty hours per week from November of 2020 until around April of 2021.

131.    The Defendants did not pay the Plaintiff the correct amount of wages and overtime for the excess of the forty-hour work week.

132.    The Plaintiff is owed approximately eight hundred seven dollars with sixty cents ($807.69) for the overtime work of approximately twenty hours a week in excess of the forty-hours a week.

133.    The Defendants owe the Plaintiff eight hundred seven dollars with sixty cents ($807.69) for five months of overtime wages of approximately twenty hours a week in excess of the forty-hours a week, which equals sixteen thousand one hundred fifty-two dollars ($16,152.00).

134.    The Defendants owe the Plaintiff her bonus.

**FIFTH CAUSE OF ACTION**

**WRONGFUL TERMINATION**

135.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

136.    Defendants' actions constitute a termination of employment without just cause.

137.    Defendants are liable to Plaintiff pursuant to Law 80, for an amount equal to three (3) months of salary plus benefits, as defined in the law, and two (2) additional weeks of compensation, based on her highest earning in any thirty-day period within the three years prior to the Plaintiff's dismissal.

138.    The sum amount of severance pay under Law 80 is approximately fourteen thousand five hundred eighty-three dollars and thirty-three cents ($14,583.33).

**SIXTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

139.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

140.    The Plaintiff entered into a valid contract with the Defendants for the purpose of becoming a full-time nonexempt employee.

141.    In the contract, the Defendants promised to provide the Plaintiff with Medical Insurance and a salary of $42,000.00.

142.    On November 4th of 2020, the Plaintiff signed an adhesion employment contract, which was drafted by the Defendants. The Plaintiff was not given any opportunity to review or modify the employment contract.

143.    A valid contract exists because the Plaintiff and Defendants consented to bind themselves with regard to one another, in which the Defendants would pay the Plaintiff a sum amount of $42,000.00 and medical insurance, as a result of the services rendered by the Plaintiff as a full-time nonexempt employee.

144.    Plaintiff complied with her obligations by providing her services which resulted in exceeding the projected sales of the store of the Defendants.

145.    However, the Defendants breached their obligations by not providing the Medical Insurance and not paying the correct salary of $42,000.00.

146.    Since November 4th, 2020 until May 31st, 2021 (the date of the Plaintiff's illegal termination), the Plaintiff frequently requested that the Defendants honor their promise to provide Medical Insurance and pay the correct salary of $42,000.00.

147.    However, the Defendants did not provide the Medical Insurance and they did not pay the correct salary of $42,000.00.

148. As a result of Defendants' material breach of contract, Plaintiff did not receive the Medical Insurance and did not receive the correct salary of $42,000.00.

149. The Plaintiff was injured during the term of this employment and was unable to seek care due to not having Medical Insurance.

150. The Defendants are liable to the Plaintiff as to all damages incurred for not providing the Medical Insurance and the correct salary of $42,000.00., plus interest.

## SEVENTH CAUSE OF ACTION

## TORTS DAMAGES

151. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

152. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

153. Defendants' actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

154. Defendants are liable to Plaintiff pursuant to the PRCC.

155. John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

156. John & Jane Doe's are liable to Plaintiff pursuant to the PRCC.

157. Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

158. Company ABC is liable to Plaintiff pursuant to the PRCC.

159.    Defendants' actions as subsidiary company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

160.    Therefore, Company ABC is vicariously liable for damages caused by the Defendants in their service pursuant to the PRCC.

161.    All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

162.    As a result thereof, Defendants' are liable for compensatory and statutory damages pursuant to the PRCC.

163.    These damages are estimated at no less than five hundred thousand dollars ($500,000.00).

## EIGHTH CAUSE OF ACTION

### INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE

164.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

165.    Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-Defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

## NINTH CAUSE OF ACTION

### ATTORNEYS FEES AND PREJUDGMENT INTEREST

166.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

167. Defendants are liable to Plaintiffs for attorney's fees and costs pursuant to Title VII, FLSA, Law 100, Law 115, Law 180 and Law 80.

168. Defendants are liable for prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

### DEMAND FOR JURY TRIAL

169. Plaintiff demand a trial by jury as to all claims and issues alleged herein

### PRAYER

Wherefore, all allegations considered, Plaintiff prays that judgment be entered in their favor and against all Defendants', specifically:

1. Granting Plaintiff's Complaint against Defendants. This Court should grant Plaintiff's complaint and find that the Defendants are liable to the Plaintiff based on the following: Discrimination based on Sex, Race and National Origin pursuant to Title VII, 42 USC sec. 2000e-2(a), Law 100, 29 LPRA sec. 146 *et seq.*, Law 69, 29 LPRA sec. 1321 et seq., and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Retaliation pursuant to Title VII, 42 USC sec. 2000e-3(a), FLSA, 29 USC sec. 201 *et seq.*, Law 115, 29 LPRA sec. 194 et seq. and Section 16 of Article II of Constitution of the Commonwealth of Puerto Rico; Violation of Wages & Overtime Pay pursuant to the FLSA, 29 USC sec. 201 *et seq.,* Law 180, 29 LPRA sec. 250 *et seq.,* Law 148, 29 LPRA sec. 501 *et seq.;* Wrongful Termination (Unjust Dismissal) pursuant to Law 80, 29 LPRA sec. 185a et seq.; Breach of Contract and Tort Damages pursuant to the PRCC.

2. An order directing Defendants to reinstate Plaintiff to her former position and to cease and desist of any further retaliatory and discriminatory conduct on the basis of age.

3.  Awarding Plaintiff back pay and front pay, together with interest, for the period that Plaintiff was deprived of her salary, as it was awarded to other employees in her previous position.

4.  Awarding the Plaintiff punitive and liquidated damages equal to twice the back pay, front pay and fringe benefits lost by the Plaintiff.

5.  Awarding the Plaintiff lost benefits, both past and future.

6.  Awarding the Plaintiff the sum amounts before mentioned in the Complaint which includes the double compensatory damages.

7.  Awarding Plaintiff wages & overtime pursuant to FLSA, Law 180 and Law 148.

8.  Awarding Plaintiff severance pay pursuant to Law 80.

9.  Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

10. Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico on this 28th day of May, 2022.

*/S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
Mobile: (787) 565-3477
E-Mails: victorriverarios@rcrtrblaw.com
          info.vrr@rcrtrblaw.com