IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

REGINA KALKEY

    Plaintiff,

       v.

EUROMODAS, INC., <u>ET AL.</u>,

    Defendants.

CIVIL NO. 22-1245 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

Regina Kalkey initiated this action against Euromodas, Inc. ("Euromodas"); PRPB, LLC ("PRPB"); PRPB Norte Inc. ("Norte"); PRPB Oeste, LLC ("Oeste"); Juan C. Castiel and María Marrero-Combas (incorrectly referred to in the operative complaint as "Marilú Marrero")(collectively, the "Individual Defendants"), in addition to various unknown defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, <u>et seq</u>. ("Title VII"); the Fair Labor Standards Act, 29 U.S.C. §§ 201, <u>et seq</u>. ("FLSA"); and Puerto Rico Law (Docket No. 20).[1] Basically, she alleges to have been: (1) unlawfully discriminated against because of her national origin and race; (2) subjected to a hostile work environment on account of her sex; and (3) unjustly terminated from her employment in retaliation for complaining about unlawful employment

---

[1] Specifically, Puerto Rico's (i) General Discrimination Statute, Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 <u>et seq</u>. ("Law 100"); (ii) Sex Discrimination in Employment Statute, Law 69 of July 6, 1985, P.R. Laws Ann. tit. 29, §§ 1321, <u>et seq</u>. ("Law 69"); Retaliation Against Employees for Offering Testimony Act, Law 115 of December 20, 1991, P.R. Laws Ann. tit. 29, §§ 194 <u>et seq</u>. ("Law 115"); Unjust Discharge Act, Law 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a-185m ("Law 80"); Minimum Wage, Vacations and Sick Leave Act, Law 180 of July 27, 1998, P.R. Laws Ann. tit. 29, §§ 250 <u>et seq</u>. ("Law 180"); Christmas Bonus Act, Law 148 of June 30, 1969, P.R. Laws Ann. tit. 29, §§ 501 <u>et seq</u>. ("Law 148"); General Obligation Breach Statute, Article 1158 of the Puerto Rico Civil Code of 2020, P.R. Laws Ann. tit. 31, § 9303 ("Article 1158"); General Tort Statute, Article 1536 of the Puerto Rico Civil Code of 2020 ("Article 1536"); and § 16 of Article II of the Constitution of Puerto Rico, P.R. Laws Ann. tit. 1, Bill of Rights, art. II, § 16 (Docket No. 20).

practices.  Id.  Further, she claims to be owed payments for services rendered, overtime, a Christmas bonus, and damages.  Id.

## I.     <u>BACKGROUND</u>

On December 20, 2022, plaintiff filed a First Amended Complaint ("Operative Complaint") (Docket No. 20).  On February 21, 2023, defendants answered that complaint, admitting some allegations, denying others, and raising a number of affirmative defenses (Docket No. 26).  On May 30, 2023, Norte and Oeste moved for judgment on the pleadings (Docket No. 46), followed by PRPB and the Individual Defendants (Docket No. 47).[2]  First, Norte and Oeste contend that they were created after plaintiff's termination, and as such, could not have been her employer or be liable for breaching a contract they are not a party to (Docket No. 46).  Second, the Individual Defendants argue that the statutes undergirding plaintiff's claims generally do not provide for individual liability (Docket No. 47).  Third, both motions assert that the employment statutes plaintiff relies on address the malfeasance she is complaining about, and accordingly, supersede Puerto Rico's general tort statute, which, for that reason, cannot be a source of liability here (Docket Nos. 46 and 47).  Plaintiff opposed the motions (Docket No. 64); the movants replied (Docket Nos. 68 and 75); and plaintiff sur-replied (Docket No. 82).[3]  For the reasons explained below, Norte and Oeste's motion must be granted, and the Individual Defendants' motion must be granted in part and denied in part, this, with respect to the FLSA.

---

[2] For the sake of simplicity, the court construes the motion at Docket No. 47 as having been filed by the Individual Defendants.

[3] The motion cycle closed on September 28, 2023.

Kalkey v. Euromodas, et. al.
Civil No. 22-1245 (PAD)
Opinion and Order
Page 3

## II.    DISCUSSION

### A. Pleading Standard.

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed" but early enough not to delay trial. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). Cast in this mold, both types of motions are treated in much the same way. Id. In consequence, courts take the well-pleaded facts and reasonable inferences therefrom in the light most favorable to the nonmovant. Id. This standard calls on courts to separate wheat from chaff, in other words, to separate the operative complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). Id. From there, courts focus on whether the action involves "a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010). Plausibility is not akin to probability, but asks for more than a sheer possibility that a defendant acted unlawfully. Id.

Plaintiff must come forward with "more than labels and conclusions." Bell Atl. Corp., v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action will not do. Id. If the accompanying factual content holistically permits the court to reasonably infer "that the defendant is liable for the misconduct alleged," dismissal is not appropriate. García-Catalán v. U.S., 734 F.3d 100, 103 (1st Cir. 2013). The inquiry does not demand a high degree of factual specificity. Id. A plausible but "inconclusive inference from pleaded facts" suffices at this juncture. Rodríguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 286 (1st Cir. 2014). When all is said and done, judgment on the pleadings should be allowed "only" if

the properly considered facts conclusively establish that the movant is entitled to what it requests.

Kando, 880 F.3d at 58.

**B. Norte and Oeste.**

**1. Title VII.**

Norte and Oeste seek dismissal because they came into existence after plaintiff was let go, and as such, could not have been her employer (Docket No. 46).  Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from retaliating against a current or former employee for engaging in statutorily protected conduct.  42 U.S.C. § 2000e-3.  It protects employees from employers.  See, Alberty-Vélez v. Corporación de Puerto Rico para la Difusión Pública, 361 F.3d 1, 6 (1st Cir. 2004)(applying concept).  The two terms go hand in hand.  See, López v. Mass., 588 F.3d 69, 83 (1st Cir. 2009)(Title VII "ties the definition of an 'employer' to the meaning of employees").  There can be no employer without an employee or vice versa.[4]

An employer has an employee if it "maintains an employment relationship" with her. Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S. 202, 207 (1997).  Without that relationship, unless the grievance involves a failure to hire an applicant for employment, a person has no case under Title VII.  See, López, 588 F.3d at 72 (Title VII employment discrimination claim depends on the defendant being the plaintiff's employer).  To qualify as an employer under

---

[4] As well, Title VII protects "applicants for employment" with covered employers.  See, 42 U.S.C. § 2000e2(a)(2) & (c)(2); General Tel. Co. of the Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 323 (1980).  Because the allegations center on events that allegedly occurred after plaintiff was hired and became an employee, the court focuses on this aspect of the statutory coverage spectrum.

Title VII, the entity "must exercise significant control" over the terms and conditions of plaintiff's employment.  Medina v. Adecco, 561 F.Supp.2d 162, 177 (D.P.R. 2008).

Plaintiff's employment terminated on May 31, 2021 (Docket No. 20, ¶ 1), whereas Norte and Oeste were incorporated on August 23, 2021, and October 12, 2021, respectively.[5]  As they did not exist when plaintiff worked for the Euromodas organization,[6] how could they be properly considered plaintiff's employer?  Plaintiff responds that all defendants, including Norte and Oeste, are a single or joint employer because, among other things described below in connection with the Individual Defendants, they share employees; siphon funds between them; and misreport revenue (Docket No. 64, pp. 3, 16-21).

Two or more nominally separate entities may be considered a single or integrated employer if they are so interrelated that they constitute a single employer.  Burnett v. Ocean Properties, Ltd., 987 F.3d 57, 65 (1st Cir. 2021)(citation and quotation marks omitted).  That is a function of four

---

[5] The dates of incorporation are matters of public record easily ascertainable from the Puerto Rico Online Registry of Corporations and Entities (https://rceweb.estado.pr.gov/en/) and thus, may be properly considered in evaluating a Rule 12 motion.  See, United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016)(courts may consider "matters of public record and facts susceptible to judicial notice").  Contrary to plaintiff's suggestion at Docket No. 64, pp. 5, 22, 31, that does not convert the motion for judgment on the pleadings into a "motion for summary judgment."  Santiago v. Bloise, 741 F.Supp.2d 357, 361 (D. Mass. 2010).

[6] In using the term "organization," the court is not zeroing in on any particular entity at this juncture, albeit the record shows that plaintiff signed an employment agreement with PRPB on November 4, 2000, copy of which Norte and Oeste presented at Docket No. 46-1.  The operative complaint alludes to the agreement (Docket No. 20, ¶¶ 22, 194), which authorizes the court to consider it in connection with the motion sub judice.  See, Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007)(in reviewing a motion under Rule 12(c) as in reviewing a Rule 12(b)(6) motion, the court may consider "documents sufficiently referred to in the complaint").  A finding that plaintiff signed the agreement, however, is for the most part unnecessary for disposition of the issues raised in defendants' motions for judgment on the pleadings.  But the fact that Norte and Oeste submitted the agreement may have saved plaintiff from dismissal for failure to identify the direct employing entity.  Plaintiff states that she worked for a "family owned business" comprised by four corporations, describing them as a single or joint employer (Docket No. 20, ¶¶ 1, 118-120).  Even on these theories, "some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible."  Cavallaro v. UMass Memorial Healthcare, Inc., 678 F.3d 1, 10 (1st Cir. 2012).  Further, plaintiff does not suggest that she was ignorant of which entity directly or nominally employed her.  A number of courts have made clear that they "will not put up with game-playing omissions of plainly relevant detail" (id.), and the First Circuit expressed to be "increasingly sympathetic to this view."  Yet, in this instance, like in Cavallaro, Norte and Oeste filled the gap.

factors, namely: (1) common ownership; (2) common management; (3) centralized control over labor relations; and (4) interrelatedness of operations. Id. The factors were first developed "to determine whether interrelated companies should be treated as one entity under the National Labor Relations Act." Id. at 65 n. 7. They are applied flexibly, placing special emphasis on "the control of employment decisions." Id. at 65.[7]

Under this approach, an employee may impose liability for certain violations of employment law "not only on the nominal employer but also on another entity comprising part of the single integrated employer." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005). Its rationale lies in the fairness of imposing responsibility on the entity that shares "decision-making authority with the employing entity." Murray v. Miner, 74 F.3d 402, 405 (2d Cir. 1996). Thus, for this test to apply, the two entities must constitute a single employer at the time of the alleged unlawful act(s). Id.

In turn, the "joint employer" inquiry revolves around whether different parties "control, in the capacity of employer, the labor relations of a given group of workers." Rivas v. Federación de Asociaciones Pecuarias de Puerto Rico, 929 F.2d 814, 820 (1st Cir. 1991). In evaluating whether distinct entities so qualify, courts look at a number of elements, such as, which party has the authority to: (1) hire, discipline, and fire employees; (2) promulgate work rules; (3) assign and supervise employee's work and daily activities; and (4) set and change compensation, benefits, and overtime. Id. at 820-821.

The inquiry recognizes that "the business entities involved are in fact separate but that they share or codetermine those conditions of employment." Torres-Negrón, 488 F.3d at 41 n. 6. A

---

[7] This factor applies when the related entity "exerts an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority" ever those decisions. Torres-Negrón v. Merck & Company, Inc., 488 F.3d 34, 42 (1st Cir. 2007)(bracket in original, internal quotations omitted).

finding that two companies are an employee's "joint employers" only affects each employer's liability to the employee for their own actions, not for each other's actions.  Id.  The relationship between the asserted employing entities is evaluated as of the date of the challenged decisions regardless of what that relationship evolves into thereafter.  See, Ziegler v. Del. Cnty Daily Times, 128 F.Supp.2d 790, 798-802 (E.D. Pa. 2001)(discussing topic and applying formulation).[8]

Together, the "single employer" theory and the "joint employer" theory "concentrate on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." Llampallas v. Mini-Circuits, Lab. Inc., 163 F.3d 1236, 1244, 1245 (11th Cir. 1998). In consequence, plaintiff's imputations of employee-sharing and supposed financial misdeeds are of no import to her claims against Norte and Oeste.  There are no factual allegations that Norte or Oeste had a role in the incidents plaintiff has alleged as basis for her action; that they controlled labor relations in PRPB or elsewhere when those purported incidents allegedly occurred; or that they had authority over the terms and conditions of plaintiff's employment.  None of that is possible simply because at the time of the events underlying the Title VII action, Norte and Oeste did not exist.  So, the claims against them must be dismissed.  See, Murray, 74 F.3d at 403, 405 (dismissing plaintiff's claim against corporate defendant that had no relationship with plaintiff's employer at the time of the employer's alleged wrongdoing); Nevarez v. TN Trailers, LLC, 2006 WL 1128651, *6 (N.D. Ind. 2006)(dismissing plaintiff's claim against corporate defendant that came into existence after employment decision at issue); Ziegler, 128 F.Supp.2d at 798-802

---

[8] See also, Adams and Assoc., Inc. v. National Labor Relations Act, 871 F.3d 358, 377 (5th Cir. 2017)(noting in the context of National Labor Relations Act, that the relevant time period for assessing joint-employer status is the period in which the unfair labor practices took place).

(dismissing plaintiff's claim against corporate defendant because record did not show it had a close relationship with plaintiff's employer as of the day that he was terminated from employment).

Plaintiff alleges that the Individual Defendants and corporate defendants are subdividing themselves to avoid antidiscrimination and antiretaliation laws, and for that reason, argues or suggests that Norte and Oeste cannot be let off (Docket No. 94, p. 3).[9]  The allegation conveys the wrong impression that merely "creating a corporation for the purpose of enjoying the benefits of owning a business while at the same time, avoiding personal liability, should be grounds to pierce." Franklin A. Gevurtz, *Piercing Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil*, 76 OR. L. REV. 853, 855 (1997).  As most corporations exist for the purpose of achieving limited liability for the owners, it would be perverse to grant limited liability to anyone who did not care about it and deny it everyone who sought it.  Id.

In this light, corporations that simply "try to limit their overall liability by establishing or acquiring separately incorporated subsidiaries do not thereby transgress legal or ethical norms." United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1093 (1st Cir. 1992).  In our commercially sophisticated society, limited liability is often a paramount consideration in the decision to maintain corporate separateness, and properly so.  Id. Thence, there is "nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation."  Miller v. Honda Motor Co., Ltd., 779 F.2d 769, 773 (1st Cir. 1985).  Plaintiff does not present a plausible scenario for departure from these well-established principles.

First, there is no indication in the pleadings that plaintiff was deceived into dealing with PRPB or anybody else rather than with Norte or Oeste, which did not exist when the alleged

---

[9] The court construes the allegation as referring to corporate defendants, not to the Individual Defendants.

violations occurred and had nothing to do with them.  Second, the integrated-employer test "ensure[s] that a defendant has not structured itself to avoid labor laws." Engelhardt v. S.P. Richards Co., Inc., 472 F.3d 1, 5 (1st Cir. 2006).  Norte and Oeste came into being *before* this litigation began.  As noted earlier, they were not a component of an integrated or single employer when plaintiff worked for the Euromodas organization (they could not have been, because they did not exist).  Third, there is no allegation that PRPB or any related entity were operating in Barceloneta and Mayaguez —where Norte and Oeste respectively operate or operated stores (Docket No. 20, ¶ 30)— and split themselves into those corporations, eliminating themselves as employers in those locations by a change in employment relationships, including with plaintiff, to avoid compliance with labor/employment laws.

What plaintiff has alleged is that at the time she was terminated, Euromodas operated a store in the Roosevelt Avenue area of San Juan, Puerto Rico (Euromodas), and PRPB in Plaza Las Américas (Euromodas Sports Store), also in San Juan (Docket No. 20, ¶¶ 30, 108).  Nothing remotely suspicious emerges from this set of events.  Compare with, K.C. Roofing Center v. On Top Roofing, Inc., 807 S.W.2d 545, 546-547, 549-550 (Mo. App. W.D. 1991)(controlling shareholder liable for corporation's debts where shareholder operated an intricate corporate shell game in which he ceased doing business as one corporate entity when he was unable to pay the corporation's creditors and then would form another corporation in place of the prior one).

Moving forward, a somewhat different but related issue is whether employees of the different corporate entities sued in this case may be aggregated under either the single employer or the joint employer doctrines to satisfy the Title VII coverage threshold.  To this effect, Title VII applies to employers with at least 15 employees on "each working day in each of 20 or more calendar weeks" during the year in which the alleged discrimination occurred or the preceding

year, that is, the year prior to that year.  42 U.S.C. § 2000e(b).  An employee is counted under the statute "for each day that an employment relationship exists regardless of whether the employee reported to work each day."  Vera-Lozano v. Int'l. Broad., 50 F.3d 67, 70 (1st Cir. 1995).

The question is frequently, but not necessarily, addressed in two parts: "application of the 'payroll method,' followed by application of traditional agency law principles for defining employer and employee, if the individual is on the payroll."  De Jesús v. LTT Card Services, Inc., 474 F.3d 16, 21 (1st Cir. 2007).  Nevertheless, one could skip to the second test if it were dispositive.  Id.  Single employer status permits the aggregation of companies, each of which may have fewer than 15 employees to meet the 15-employee coverage requirement while aggregating employees under joint-employer theory involves analysis of which employees of company B are attributable to company A.  See, Arculeo, 425 F. 3d at 198-200 (discussing topic); Sanford v. Main Street Baptist Church Manor, Inc., 327 Fed.Appx. 587, 594 (6th Cir. 2009)(unpublished) (aggregation of joint employes for purposes of establishing the Title VII numerosity requirement is permissible when one joint employer exercises control over the employees of the other joint employer)(citing in part, Burdett v. Abrasive Eng'g & Tech., Inc., 989 F.Supp. 1107 (D. Kan. 1997)(plaintiff could aggregate employees of staffing agency as long as those employees were staffed with the employer and the employer exercised sufficient control over them)).

In these circumstances, Norte and Oeste have no employees to aggregate to any coverage mix here.  Plaintiff cannot be counted as an employee of Norte or Oeste, which had no say defining the terms or conditions of her employment or its termination and did not participate in the acts and omissions that plaintiff has sued the defendants for.  They were nonexistent when those alleged incidents purportedly occurred.  Thus, it would be improper to aggregate the employees they may have had after they were created with those of any other entity in the Euromodas organization to

allow plaintiff to maintain this action.  See, Llampallas, 163 F.3d at 1244-1245 (vacating portion of district court's judgment holding corporate defendant liable and remanding with instructions to dismiss the case against it, because that defendant had nothing to do with the adverse employment decision on which the Title VII action was based, and made no decisions that affected the terms and conditions of employment of the codefendant's employees; hence, the number of employees it had should not have been aggregated with the number of the codefendant's employees to determine whether the defendant satisfied Title VII's 15-employee coverage threshold).[10] Bringing things full circle, dismissal of claims against Norte and Oeste follows, without employee aggregation under Title VII.

### 2. **FLSA**.

In general, the FLSA requires employers to, *inter alia*, pay non-exempt employees in accordance with applicable minimum wage rates, as well as overtime compensation at a rate of at least one and one-half times their regular rate of pay, for all hours worked in excess of a 40-hour workweek.  See, 29 U.S.C. §§ 206-207 (laying out payment obligations).[11]  As well, it prohibits an employer from discharging or in any other manner discriminating against any employee because such employee "has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FSLA]."  Id. at § 215(a)(3).

The FLSA defines the term "employer" as "any person acting directly or indirectly in the interest of the employer in relation to an employee."  29 U.S.C. § 203(d).  For this purpose, a

---

[10] Plaintiff alleges that at the time she was terminated, defendants employed approximately 19 persons between the Euromodas store in Roosevelt Avenue and the Euromodas Sports Store at Plaza Las Américas, including the online store (Docket No. 20, ¶ 108).  Whether that aggregation is appropriate is beyond the scope of this Opinion and Order.

[11] The FLSA exempts from the overtime pay requirements employees who work in a "bona fide executive, administrative or professional capacity."  29 U.S.C. § 213(a)(1).  Defendants allege that plaintiff was an exempt managerial employee (Docket No. 26, ¶ 27).  As mentioned earlier, the court bypasses this allegation in evaluating the motions before it under Rule 12(c).

person is "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." Id. at § 203(a). Further, the statute describes the term "employee" as "any individual employed by an employer.' Id. at § 203(e)(1). And the term "employ" means "to suffer or permit to work." Id. at § 203(g). Neither Norte nor Oeste can be considered plaintiff's employer, suffering or permitting her to work, because they did not exist when she worked for the Euromodas organization. They had no employment relationship with her. Accordingly, the FLSA action against Norte and Oeste must be dismissed. See, Bates v. Bell Telephone Co. of Pa., 1993 WL 379542, **3-4 (W.D. Pa. July 13, 1993)(dismissing FLSA claim in absence of employment relationship between the parties).[12]

### 3. Puerto Rico Employment Law.

#### a. General Definition.

Puerto Rico law leads to the same result reached under Title VII and the FLSA. The Labor Transformation and Flexibility Act, Law No. 4 of January 26, 2017 ("LTFA"), defines the employment contract as "a contract by which a juridical or natural person, that is called 'the employer,' hires a natural person who is called the 'employee' to render services voluntarily for the benefit of the employer or a third person in exchange for compensation for the services rendered when the services are rendered for account of another, and within the scope of an organization and under the direct management of the employer." P.R. Laws Ann. tit. 29, § 122.[13]

---

[12] To the same effect, see, Fetterly v. Cain, 203 F.3d 828, *1 (5th Cir. 1999); Muhammad v. Platt College, 46 F.3d 1136, *1 (8th Cir. 1995).

[13] Excluded from employment relationships and from the definition of "employee" unless otherwise expressly provided for in a special law, are "[i]ndependent contractor relationships; franchise relationships; government employees or public official; mandatory services rendered in a penal or correctional institution; work performed voluntarily and free of charge, due to a mere friendship or benevolence for public services, religious, or humanitarian institutions; and work performed by an immediate family member, unless it is shown, in this last case, that the intent of the parties and the manner in which such relationship is to be maintained is that of an employer-employee." P.R. Laws Ann. tit. 29, § 122a.

By this definition, plaintiff was not Norte's or Oeste's employee.  They did not exist when she worked for the Euromodas organization and could not have hired her to render services to them or a third party.  The principle runs across the local employment statutes that plaintiff has invoked to maintain this action.

### b.  Law 69.

Law 69 prohibits employers from suspending, refusing to employ or dismissing "any person, or in any other way discriminate against a person with respect to his wages, terms or working conditions, on account of his or her sex," and from limiting, dividing or classifying his employees or the persons who apply for a job, "in any way that could deprive or tend to deprive that person of a job opportunity or that in any other way may adversely affect that person's status as an employee or account of his or her sex."  P.R. Laws Ann. tit. 29, § 1323.[14]  Additionally, Law 69 precludes employers from dismissing or discriminating against any employee "who files a complaint or charge, or is opposed to discriminatory practices, or participates in an investigation or suit for discriminatory practices against the employer."  Id. at § 1340.  In that way, Law 69 brings forward a compensation scheme for the employee to rely on when her employer infringes any of the practices that the statute prohibits.  See, Cintrón v. Ritz Carlton, 162 P.R. Dec. 32, 38 (2004)(describing provision).  Neither Norte nor Oeste could have done anything prohibited by Law 69 against plaintiff, for they did not exist when plaintiff worked for the Euromodas organization.  She was not their employee.  Consequently, the Law 69 claim against them must be dismissed.

---

[14] Law 69 also imposes obligations on employment agencies, labor unions and joint labor-management committees that control "apprenticeship, training or retraining programs, including on-the-job training programs."  P.R. Laws Ann. tit. 29, §§ 1324-1326.

c. **Law 80**.

Law No. 80 makes private-sector employers liable for payment of an indemnity to employees hired for undefined term who are discharged without just cause. See, P.R. Laws Ann. tit. 29, § 185a (stating coverage and payment obligation). The statute defines "employer" as "any natural or juridical person that employs or allows any employee to work for compensation," excluding "the Government of Puerto Rico and each one of the three branches thereof, its departments, agencies, instrumentalities, public corporations, and municipal governments as well as municipal instrumentalities or corporations," and "the United States of America." Id. at § 185n(g).

Likewise, Law 80 defines the term "employee" as "any person who works for an employer and receives compensations for his services." Id. at § 185n(e). However, the term excludes "independent contractors, government employees, employees covered by a collective bargaining agreement in effect, or employees who work under a temporary employment contract for a fixed term or project." Id. Plaintiff could not have been an employee of nonexistent entities such as Norte and Oeste, which, for the same reason, could not have been her employer. Therefore, the Law 80 claim against Norte and Oeste must be dismissed. See, Rosado-Mangual v. Xerox Corporation, 2019 WL 7247776, *13 (D.P.R. Dec. 27, 2019)(dismissing employee's spouse's Law 80 claim because she had not been defendants' employee).

d. **Law 100**.

Law 100 prohibits employers from discriminating against employees because of, *inter alia*, national origin, race, and sex. See, P.R. Laws Ann. tit. 29, § 146 (codifying prohibition and laying out remedies for violation). The statute defines "employer" as "any natural or [juridical] person employing laborers, workers or employees, and the chief official, manager, officer, managing

partner, administrator, superintendent, foreman, overseer, agent, or representative of such natural or [juridical] person.  Id. at § 151(2).[15]  Plaintiff could not have been an employee of nonexistent entities such as Norte and Oeste, which, by the same token, could not have been her employer. Thus, the Law 100 claim against Norte and Oeste must be dismissed.  See, Silva v. Hospital Español Auxilio Mutuo, Inc., 2014 WL 5024085, **22, 24-25 (P.R. Ct. App. Aug. 29, 2014)(dismissing discriminatory termination claim under Law 100 because statute seeks to eliminate discrimination in labor-employment relationships, and no such relationship existed between the parties).

     e.  **Law 115**.

Law 115 makes it unlawful for an employer to discharge, threaten, or discriminate against: (1) an employee who has offered or attempted to offer testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico; and (2) an employee who has provided or attempted to provide testimony, expression or information in internal procedures the company has established or before any employee or representative in a position of authority, as long as the expression is not of a defamatory character or constitutes disclosure of privileged information established by law.  See, P.R. Laws Ann. tit. 29, § 194b(a)(so providing).  Respecting the term "employer," it means "all employers equally, whether they are public or private employers, public corporations, or any other employer denomination existing at present or to be created in the future, any natural or juridical person of any kind, including the Government of Puerto Rico, its three branches and the instrumentalities or corporations thereof, its municipal government and instrumentalities or corporations thereof, which, whether for profit or not, employ

---

[15] The statute also applies to labor unions and joint labor-management committees that control "apprenticeship, training or retraining programs."  P.R. Laws Ann. tit. 29, §§ 147 & 147(a).

persons for any type of compensations, as well as their agents or supervisors." Id. at § 194(b).[16]

In turn, the statute defines "employee" as "any person who provides services in exchange for

salaries, or any other type of remuneration, through an oral, written, explicit or implicit contract .

. . ." Id. at § 194(a).  As plaintiff did not provide services of any kind to Norte or Oeste, she could

not have been their employee.  That being so, the Law 115 claim against them must be dismissed.

### f.   Law 148.

Law 148 requires employers to pay employees a bonus between November 15 and

December 15 of each year under certain circumstances.  See, P.R. Laws Ann. tit. 29, §§ 501-502

(setting forth bonus-payment obligation and requirements).  The statute defines "employer" as

"any natural or juridical person of any nature who, for profit or not, employs or allows any number

of laborers, workers, or employees to work for any type of compensation.  Id. at § 504.  Plaintiff

could not have been an employee of nonexistent entities such as Norte and Oeste.[17]  On this basis,

the Law 148 claim against them must be dismissed.  See, Fernández v. A.T.P.R., 4 P.R. Offic.

Trans. 644, 645, 649 (1975)(dismissing Christmas bonus claim in absence of employment

relationship between the parties).

### g.   Law 180.

Law 180 regulates vacation, sick and emergency leave.  See, P.R. Laws Ann. tit. 29, § 250b

et seq. (laying down accrual, use, and payment requirements).  It defines "employer" as "any

natural or juridical person of any nature who, for profit or not, employs or allows any number of

---

[16] The term "employer" also includes "labor organizations and other organizations, private groups or associations in which employees participate to negotiate employment terms and conditions, as well as employment agencies."  P.R. Laws Ann. tit. 29, § 194(b).

[17] Moreover, the corresponding eligibility requirements include working a minimum of hours for the employer between October 1st of the calendar year and September 30th of the following calendar year.  See, P.R. Laws Ann. tit. 29, § 501 (specifying requirements).  Plaintiff fails this test at least with respect to Norte and Oeste.

Case 3:22-cv-01245-PAD   Document 114   Filed 12/11/23   Page 17 of 28

Kalkey v. Euromodas, et. al.
Civil No. 22-1245 (PAD)
Opinion and Order
Page 17

laborers, workers, or employees to work for any type of compensation." Id. at § 250b(g).  Plaintiff

could not have been an employee of nonexistent entities such as Norte and Oeste, which, similarly,

could not have been her employer.  With this in mind, the Law 180 claim against Norte and Oeste

must be dismissed.  See, Rodríguez v. Santiago Buono ER Services LLC, 2022 WL 1638642, **1,

23 (P.R. Ct. App. Apr. 11, 2022)(dismissing Law 180 claim in absence of employment relationship

between the parties).

### 4.  **Breach of Contract.**

Plaintiff sued defendants, including Norte and Oeste, for breach of the terms of the

employment contract she signed with PRPB (Docket No. 20).  Norte and Oeste seek dismissal

because plaintiff signed the contract with PRPB, not with them, and cannot be held liable for the

alleged breach, which purportedly took place before they came into existence (Docket No. 46).

Pursuant to Article 1223 of the Puerto Rico Civil Code of 2020, agreed-upon contract terms have

legal force between the parties, their successors and third parties in the way provided for by law.

See. P.R. Laws Ann. tit. 31, § 9754 (so stating)(court translation); JIF Trading LLC v. Mizrahi,

2021 WL 5492968, *3 (D.P.R. Nov. 23, 2021)(explaining that under Article 1044 of the Civil

Code of 1930, obligations arising from a contract have legal force between the contracting parties

and must be fulfilled in accordance with its stipulations).

A claim for breach of contract has three elements: "(1) a valid contract; (2) a breach by one

of the parties to the contract; and (3) resulting damages." Yacht Caribe Corp. v. Carver Yacht

LLC, 270 F.Supp.3d 547, 555 (D.P.R. 2017).  A valid contract requires: "(1) consent of the

contracting parties; (2) a definite object which may be the subject of the contract; and (3) cause

for the obligation that is being established." Id.  There must be "a meeting of the minds as to the

terms agreed upon." K-Mart Corp. v. Davis, 756 F.Supp. 62, 66 (D.P.R. 1991).  In general, *ex*

Case 3:22-cv-01245-PAD   Document 114   Filed 12/11/23   Page 18 of 28

Kalkey v. Euromodas, et. al.
Civil No. 22-1245 (PAD)
Opinion and Order
Page 18

*contractu* actions "can only be brought by one contracting party against the other." <u>Travelers CAS & Sur. Co. of Am.</u> v. <u>Vázquez-Colón</u>, 2021 WL 4267883, *10 (D.P.R. Sept. 15, 2021)(citations omitted).  A stranger to the contractual relationship . . . may demand the fulfillment of a contract successfully only if the contract contains a stipulation in his favor. . . ." <u>Cruz Berríos</u> v. <u>Accreditation Council for Graduate Medical Educ.</u>, 218 F.Supp.2d 140,143 (D.P.R. 2002).

The Operative Complaint is devoid of allegations that Norte or Oeste were part of the contract plaintiff relies on to bring forth a breach of contract claim; that they assumed any of those obligations; or that they succeeded PRPB as a party under the agreement.  Accordingly, the breach of contract claim against them must be dismissed.  <u>See</u>, <u>Yacht Caribe Corp.</u>, 270 F.Supp.3d at 556 (dismissing contract breach claim against party that did not consent to enter into the asserted contract); <u>K-Mart Corp.</u>, 756 F.Supp. at 67, 69 (dismissing contract breach claim because no binding contract existed between store and developers for the two disputed shopping center leases).

## C. **Individual Defendants**.

Shifting lenses, the Individual Defendants contend that the case should be dismissed against them because the statutes plaintiff is relying on generally do not provide for individual liability (Docket No. 47, pp. 10-18).[18]  Their position is accurate except with respect to the FLSA.

### 1. **Title VII.**

Pertinently, Title VII imposes obligations on the employer, which it defines as a person "engaged in an industry affecting commerce" who, as mentioned earlier, has 15 or more employees during the period used to determine statutory coverage, and any agent of such a person.  42 U.S.C. § 2000e(b).  The term "person" includes "one or more individuals, governments, governmental

---

[18] Courts use the term "individual liability" to mean the liability of individuals who do not otherwise meet the statutory definition of employer.  <u>U.S. E.E.O.C.</u> v. <u>AIC Security Investigations, Ltd.</u>, 55 F.3d 1276, 1280 & n. 2 (7th Cir. 1995).

agencies, political organizations, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 or receivers." Id. at § 2000e(a).[19]

The "agent" language directs courts to impose *respondeat superior* liability upon employers for the acts of their agents. See, Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)(articulating proposition); AIC Security Investigations, Ltd., 55 F.3d at 1281 (similar). Hence, the statute does not provide for individual liability. See, Matos Ortiz v. Com. of P.R., 103 F.Supp.2d 59, 61 (D.P.R. 2000)(individual liability does not lie under Title VII). To permit individual liability "would improperly expand the remedial scheme crafted by Congress." Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009)(affirming district court's dismissal of claims against individual defendants). Consequently, the Individual Defendants' request to dismiss the Title VII claim against them must be granted.

**2. Puerto Rico Law.**

The LTFA states that except as otherwise expressly provided, when used in a law or a contract, the term "employer" includes "any person that represents the employer or exercises authority on its behalf, but only for the purpose of identifying the person whose decision, action, or omission shall be attributable to the employer." P.R. Laws Ann. tit. 29, § 122. In this way, liability runs against the employer, not against the employer's agents or employees, an axiom undergirding the statutes plaintiff has anchored this action on. See, Caballer Rivera v. Adriel Toyota, 200 P.R. Dec. 120 (2018)(English-language translation included in Appendix I)(Law 69); Santiago-Nieves v. Braulio Agosto Motors, Inc., 197 P.R. Dec. 369 (2017)(Law 115); González

---

[19] Elsewhere, Title VII exempts from coverage certain entities that otherwise would fall within the § 2000e(b) definition. Those exemptions have no bearing in this case.

v. Baxter Healthcare S.A., 2021 WL 1208207, *38-40 (D.P.R. Mar. 29, 2021)(Law 100, except

for acts of harassment); Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc., 806

F.Supp.2d 503, 509 (D.P.R. 2011)(Law 80); P.R. Laws Ann. tit. 29, § 504 (Law 148);[20] and P.R.

Laws Ann. tit. 29, § 250b (Law 180).[21]   On this account, the Individual Defendants' request to

dismiss the Puerto Rico employment law claims against them must be granted.

### 3.   **FLSA.**

In contrast to Title VII and Puerto Rico law, the FLSA permits individual liability subject

to a context-dependent "economic reality" test.   Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 47

(1st Cir. 2013).   This is so, because under the FLSA an "employer" is "any person acting directly

or indirectly in the interest of an employer in relation to an employee."   29 U.S.C. § 203(d).   In

this sense, the statute "contemplates there being several simultaneous employers who may be

responsible for compliance with the FLSA."   Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962,

965 (6th Cir. 1991).   Its definitions are comprehensive enough to require their application to many

persons and working relationships, which prior to the FLSA "were not deemed to fall within an

employer-employee category."   Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675

(1st Cir. 1998).   Thus, "[i]t is unnecessary to pierce the corporate veil to find individuals within a

corporation personally liable for violations of the FLSA."   Qun Lin v. Cruz, 239 A.3d 720, 735

(Md. App. 2020)(citing Donovan v. Agnew, 712 F.2d 1509, 1511-1512 (1st Cir. 1983)).

---

[20] Law 148 defines the term "employer" as "any natural or juridical person of any nature who, with or without the intention of profit, employs or allows to work laborers, workers or employees through any kind of compensation . . . ."   P.R. Laws Ann. tit. 29, § 504.

[21] Law 180 defines the term "employer" as "any natural or juridical person of any nature who, for profit or not, employs or allows any number of laborers, workers, or employees to work for any type of compensation."   P.R. Laws Ann. tit. 29, § 250b.

An individual's status as a corporate shareholder, director, officer, or manager does not automatically impart "employer" liability on that individual.  Reynolds v. Solo & Ad, Inc., 2015 WL 5882053, *3 (D. Md. Oct. 2, 2015).  However, a shareholder with a significant ownership interest with operational control of substantial aspects of the corporation's day-to-day functions and direct participation in "creating or adopting" the unlawful pay practices complained about, is an "employer" along with the employing corporation, jointly and severally liable for those practices.  Manning, 725 F.3d at 47-48.

Against this backdrop, plaintiff alleges that the Individual Defendants: owned the corporate defendants (including the employing entity, PRPB), and exerted extensive or pervasive control over them (Docket No. 20, ¶¶ 12, 113); misclassified the titles, roles, employees' responsibilities and work schedules to pay less wages, overtime, and benefits (id., ¶ 106); and together with the corporate defendants, ordered plaintiff to work in excess of 60 hours per week from November 2020 until April 2021 without paying the correct amount of overtime for the excess of the 40-hour work week.  Id. at ¶ 183.[22]  Additionally, plaintiff alleges that in April 2021 she complained to the defendants when they forced her to work overtime without compensation and was illegally terminated on May 31, 2021, in retaliation for having so complained.  Id. at ¶¶ 75-78.

Under federal notice pleading standards, these allegations are sufficient to give the Individual Defendants fair notice of a plausible FLSA claim against them.  See, Baystate Alternative Staffing, 163 F.3d at 677-679 (remanding personal liability issue for reevaluation based on individual's ownership interest; degree of control over the corporation's financial affairs and compensation practices; and role in causing the corporation to compensate or not to

---

[22] The term "corporate defendants" cannot be read to include Norte and Oeste, which did not exist when those acts allegedly occurred.

compensate employees in accordance with the FLSA); Manning, 725 F.3d at 48-49 (reversing dismissal of FLSA action against former president and CEO and noting that the case law's emphasis on ownership and financial control is sensible, because these factors suggest a strong degree of authority over the corporation's finances and, as a corollary, the ability to cause the corporation to undercompensate employees); Deschepper v. Midwest Wine and Spirits, Inc., 84 F.Supp.3d 767, 777-778 (N.D. Ill. 2015)(denying motion to dismiss predicated on corporation's owner's contention that he was not an employer under the FLSA, because of the allegations about the control that the owner exercised over the workforce, resources, and reimbursements; and the role he played in misclassifying plaintiffs as independent contractors, thus depriving them of payment of overtime premium for hours worked over 40 in a workweek).  Therefore, the Individual Defendants' request to dismiss the FLSA claim against them must be denied.

### 4.  Piercing Corporate Veil.

Plaintiff asserts that the corporations' veil should be pierced to make the individual owners personally responsible for the companies' liabilities (Docket No. 20, pp. 3, 14-16).[23]   The Individual Defendants counter that entities are presumed to be separate from their owners and officers and that this presumption can only be pierced through "strong and robust evidence" (Docket No. 75, p. 4).   To the Individual Defendant's way of thinking, plaintiff's conclusory allegations based on her "information and belief" are not enough to impose personal liability against them.  Id. at 5.

A corporation "is not the same" as its shareholders or its affiliates.  Secon Service System, Inc., v. St Joseph Bank and Trust Co., 855 F.2d 406, 412 (7th Cir. 1988).  As a result, in the absence

---

[23] Given that, as discussed above, it is not necessary to pierce the corporate veil to impose individual liability under the FLSA, the court construes plaintiff's request as referring to liability under Title VII and Puerto Rico law.

of a statute affirmatively providing otherwise, a shareholder is "not liable" for the corporation's

obligations.  Mayes v. Moore, 419 F.Supp.2d 775, 780 (M.D.N.C. 2006).  This principle is amply

recognized as "a cornerstone" of corporate law.  DeBreceni v. Graf Bros. Leasing, Inc., 828 F.2d

877, 879 (1st Cir. 1987).  Still, piercing may be appropriate where the corporate form has been

fraudulently or wrongly used and the misuse harmed or injured the party that seeks to have the veil

pierced.   See, I WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF

CORPORATIONS, § 43, at 203 (observing in the context of corporate parent and subsidiary

relationships, that the injured party must show some connection between its injury and the

shareholder's improper manner of doing business).[24]

In this setting, indicia of misuse include: (1) shareholders' failure to observe corporate

formalities; (2) absence of corporate records; (3) non-functioning officers or directors; (4)

inadequate capitalization in light of the purposes for which the corporation was organized; (5)

---

[24] Were it otherwise, a plaintiff would lack Article III standing, a jurisdictional requirement to maintain an action in federal court.  For this, a plaintiff must show: (1) an "injury in fact;" (2) fairly traceable to the challenged conduct; and (3) likely to be redressed by a favorable judicial decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).  For a sample of cases recognizing causal nexus as an element of the veil piercing probe, see, MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2nd Cir. 2001)(applying New York law)(explaining that to pierce the corporate veil, the party must show that owner exercised complete domination over the transaction at issue, and such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil); Orlando Residence LTD. v. Alpert, 526 F.Supp.3d 410, 416 (E.D. Wis. 2021)(applying Wisconsin law)(noting that to pierce corporate veil, party must prove control of finances policy and business practice in respect to the transaction attacked, use of such control to commit fraud or wrong, to perpetrate the violation of a statutory duty or other positive legal duty or dishonest and unjust act in contravention of plaintiff's legal rights, and that such control and breach of duty proximately caused the injury or loss complained of); Thornton v. Bayerische Motorn Werke AG, 439 F.Supp.3d 1303, 1312 (N.D. Ala. 2020)(applying Alabama law)(observing that to justify piercing the corporate veil, a plaintiff must show, inter alia, that misuse of corporate control proximately caused the harm or loss complained of) Iridex Corp. v. Synergetics USA, Inc., 474 F.Supp.2d 1105, 1109-1110 (E.D. Mo. 2007)(applying Missouri law)(rejecting request to pierce the corporate veil in part because record did not show that parent corporation's control of subsidiary proximately caused plaintiff's injury); State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 441 (2008)(applying North Carolina law)(pointing out that to pierce the corporate veil, the party must show stockholders' control of the corporation amounting to complete domination with respect to the transaction at issue, use of this control to commit a wrong, or to violate a statutory or other duty in contravention of the other party's rights, and that this wrong or  breach is the proximate cause of the injury to the other party); Scott v. AZL Resources, Inc., 753 P.2d 897, 900 (N.M. 1988)(applying New Mexico law)(stating that to pierce the corporate veil, three requirements must be satisfied: a showing of instrumentality or domination, improper purpose, and proximate causation).

intermingling of the corporation's properties or accounts with those of the owner; and (6) siphoning of funds from the corporation.  See, Navarro-Rosario v. Fuxa-Catalán, 2010 WL 1994092, *4 (D.P.R. May 18, 2010)(listing factors).  No one of these factors is "either necessary or sufficient to disregard corporate structure."  Velázquez v. P.D.I. Enterprises, Inc., 141 F.Supp.2d 189, 193 (D.P.R. 1999).  To pierce the corporate veil, the corporation "must be first assumed liable."  FLETCHER, § 41.28, at 166-167.[25]

### a.  Title VII.

From the general to the particular, the veil-piercing matrix has been applied to evaluate potential shareholder liability under Title VII.  See, Navarro-Rosario, 2010 WL 1994092, at *4 (applying matrix).  Along this line, plaintiff alleges that, among other things, the Individual Defendants had extensive and pervasive control of all of the corporate defendants; comingled the corporations' funds with their personal funds for personal use not related to the corporate defendants' business; mixed the corporate defendants' funds as some of them did not have adequate capital for the purpose of paying certain expenses such as employee payroll and inventory purchases; opened bank accounts in the corporate defendants' name depositing less than $10,000 in each account in order to avoid statutory financial reporting requirements; siphoned funds from one corporate defendant to another to pay a lower lease to third parties because some of the lease contracts depended on the profits made, and by siphoning funds they ended up paying a lower amount to those creditors; ordered employees to combine the monetary information of the daily

---

[25] Pointing to the same principle, see, Carlos E. Díaz Olivo, *Mitos y Leyendas Acerca de la Doctrina de Descorrer el Velo Corporativo*, 73 REV. JUR. U.P.R. 311, 325 n. 26 (2004)(quoting FLETCHER, supra, and ARTHUR PINTO & DOUGLAS M. BRANSON, UNDERSTANDING CORPORATE LAW 36 (1999)("A first thing to note about the doctrine . . . is that before invoking the doctrine, a plaintiff must first establish an independent basis to hold the corporation liable. Having established corporate liability . . . if the corporation defendant has insufficient assets to satisfy a prospective judgment, the plaintiff may then seek to pierce through the veil that protects the individual shareholders, or parent corporation from liability for the defendant's corporation's' debts")).

closing reports of each corporate defendant to be assigned as part of the daily closing report of other corporate defendants; and manipulated revenue to defraud tax authorities (Docket Nos. 20, ¶¶ 31-36, 38-45; 64, pp. 16-19; 82, pp. 6-12).[26]  Absent from plaintiff's extensive submissions, however, is a plausible link between alleged shareholder misuse of the corporate form with any of the Title VII-covered injuries she claims to have suffered.  In addition, the corporations have not been found liable to plaintiff.  She is not a judgment creditor here.  Given these parameters, plaintiff has not come up with sufficient allegations to pierce the corporate veil in order to find the Individual Defendants potentially liable for the employing entity's violations of Title VII.  For the same reason, the piercing request must be rejected on this point.

      **b.  <u>Puerto Rico Law</u>.**

      Puerto Rico's veil-piercing rules "are in general accordance with the federal common law of veil-piercing, and do not depart significantly from the current mainstream of veil-piercing law." STEPHEN B. PRESSER, PIERCING THE CORPORATE VEIL § 2.43, at 812 (2021-2022 ed.).  Along this line, Article 12.04(b) of the General Corporations Act of Puerto Rico, Law No. 164 of December 16, 2009, P.R. Laws Ann. tit. 14, § 3784(b), provides that no suit shall be brought against any officer, director or stockholder for any debt of a corporation of which such person is an officer, director or stockholder, until judgment is obtained against the corporation and execution thereon returned unsatisfied nor after three years from the date of such judgment.  <u>Id</u>.[27]  There are no

---

[26] Defendants denied these allegations, pointing out, among other things, that the defendant corporations are independent legal entities, with separate budgets, accounting books, employees, and formalities, are adequately capitalized, their corporate funds are handled separately from the Individual Defendants' finances, and representations to government agencies are legal and devoid of fraudulent intentions (Docket No. 26, ¶¶ 32-50, 88-107, 112-115). For the reason stated in note 4, <u>supra</u>, the court does not take defendants' allegations into account in evaluating their motions under Fed. R. Civ. P. 12(c).

[27] By exception, the provision does not apply to "suits brought against the officers or directors of a corporation which is in the process of dissolution for mismanagement in the performance of their duties" in accordance with Law No. 164.  P.R. Laws Ann. tit. 14, § 3784(b).

allegations that plaintiff holds adverse judgments against the corporate entities sued in this case.

By extension, piercing the corporate veil would be out of line in this context.

### D.  **Supplemental Claims**.

Both motions for judgment on the pleadings request dismissal of plaintiff's claim under

Article 1536 (Docket Nos. 46 and 47).[28]   The request must be granted because to the extent a

specific labor-employment provision covers the conduct for which plaintiff seeks damages, she is

barred from relying on that same conduct to sustain a tort claim in the Commonwealth.  See, Reyes-

Feliciano v. Marshalls, 159 F.Supp.3d 297, 310 (D.P.R. 2016)(articulating formulation).   And

there is no tortious conduct separate from that covered by the employment legislation turned to

here.   As a result, plaintiff's tort claims must be dismissed.  See, Franceschi-Vázquez v. CVS

Pharmacy, 183 F.Supp.3d 333, 344-345 (D.P.R. 2016)(dismissing tort claim because plaintiff

failed to point to tortious conduct separate from that covered by employment laws); Rivera-

Almodóvar, 806 F.Supp.2d at 508-509 (dismissing tort action in absence of distinct factual

allegations sufficient to support a tort claim separate from labor law claims).[29]

### E.  **Discovery**.

Plaintiff contends that the motions for judgment on the pleadings should be denied to allow

her to conduct discovery (Docket No. 64, pp. 2, 13, 22, 31).   She asserts that those motions are in

fact motions for summary judgment because they present matters outside the pleadings, namely

copy of the employment agreement and certificates of incorporation; that she submitted an

---

[28] Plaintiff did not address the issue in her opposition or sur-reply (Docket Nos. 64 and 84).

[29] Before Puerto Rico enacted the Civil Code of 2020, Article 1802 of the Civil Code of 1930 contained its general tort statute.  As Article 1802 predates the adoption of the Civil Code of 2020, the cited caselaw refers to Article 1802, now Article 1536.

unsworn declaration under penalty of perjury "to provide certain matters outside the pleadings" in light of the fact that the motions for judgment on the pleadings are motions for summary judgment; and that she is entitled to discovery to obtain facts that are unavailable to her.  Id. at pp. 23, 31, 32.

For the reasons explained in notes 5 and 6, supra, the defendants' motions for judgment on the pleadings are not motions for summary judgment.  The court has not and will not consider plaintiff's unsworn declaration in evaluating the pending motions.   Discovery would be unnecessary.  At the end of the day, Norte and Oeste did not exist when the relevant events allegedly occurred and took no part in them.  Individual liability presents a question of law, and discovery would not add to whether the statutes at issue recognize that type of liability or not. Lastly, the theory plaintiff stands on to pierce the corporate veil to reach the Individual Defendants does not  produce the result she is after.  Her allegations on this matter are extensive but for the reasons expounded earlier, do not permit piercing the corporations' veil for Title VII purposes or under Puerto Rico law.  That would not change with discovery, which would be futile and result in a waste of resources.

### III.   CONCLUSION

For the reasons stated, PRPB Norte's and PRPB Oeste's motion for judgment on the pleadings (Docket No. 46) is GRANTED.   In the same manner, all claims against them are DISMISSED.  The Individual Defendants' motion for judgment on the pleadings (Docket No. 47) is GRANTED in all respects except for potential individual liability under the FLSA, which is DENIED.    The remaining claims against the Individual Defendants are DISMISSED. Nonetheless, their request for costs in connection with their motion for judgment of the pleadings (Docket No. 47, p. 21) is DENIED.

<u>Kalkey</u> v. <u>Euromodas, et. al.</u>
Civil No. 22-1245 (PAD)
Opinion and Order
Page 28

**SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of December, 2023.

<u>s/Pedro A. Delgado Hernández</u>
PEDRO A. DELGADO HERNÁNDEZ
United States District Judge